# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STAN J. CATERBONE,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    CIVIL ACTION NO. 19-CV-2052 |
| LANCASTER COUNTY PRISON, *et al.*,<br>    Defendants. | :<br>:<br>: |

## MEMORANDUM

**SCHMEHL, J.** /s/ JLS                                                                                 **JULY 2, 2019**

       In a prior Memorandum and Order entered on June 11, 2019, the Court dismissed the Complaint filed by *pro se* Plaintiff Stan J. Caterbone in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Caterbone, a pretrial detainee confined at Lancaster County Prison ("LCP"), was granted leave to proceed *in forma pauperis* and granted leave to file an Amended Complaint ("AC"), which he did on June 24, 2019. Named as Defendants in the AC are Cheryl Steeberger, Warden of LCP, in her official and individual capacity; Alexandria Miller, identified as a counselor at LCP, in her individual capacity; James Vollrath, a sergeant at LCP in his individual and official capacity; and Prime Care, Inc. For the following reasons, the AC will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.    FACTS

       Caterbone asserts in the AC that in August 2009 he was awarded disability benefits by the United States Department of Health and Human Services "for symptoms and illnesses as an unwitting victim of U.S. sponsored mind control weapons and technologies." (ECF No. 10 at 5.) Upon being incarcerated at LCP in January 2019, he had a medical intake interview and informed authorities he needed the use of a cane and anti-inflammatory medication. (*Id.* at 7.) A

nurse employed by Defendant Prime Care Inc. denied his requests and instead prescribed a "small dose of Naproxen in the morning and night." (*Id.*) He alleges the medical staff has intermittently taken him off the medication at will to inflict pain and suffering. (*Id.*) He filed complaints and grievance with Defendant Steeberger, Prime Care and prison staff. (*Id.*) He was provided a cane on May 2, 2019. (*Id.*) He claims that his mobility has degraded since his incarceration and that "walking will become almost impossible over the span of months if effective medical treatment is not provided." (*Id.*)

Caterbone also asserts that prison officials have interfered with his ability to access the courts. He has requested copy service, carbon paper, use of the law library, mail service and counselor services, but officials "provided such sporadic availability of the menu of services that a reasonable person might conceive that prison staff was engaged in some sort of harassment or psyops campaign." (*Id.* at 8.) He claims he received two visits to the law library after making 15 requests, but, he contends, the "computer databases were no where near functioning properly." (*Id.*) He claims the grievances he filed with Defendant Vollrath about legal access were not answered on a consistent basis. He alleges harm because he "does appear pro se in some of his criminal proceedings." (*Id.* at 9.) Specifically, he asserts that he has alleged his public defender is ineffective and a judge granted him a continuance to interview private counsel. He claims he has elected to represent himself in a trial scheduled for August 19, 2019. (*Id.* at 9-10.) He has also filed a complaint with the Pennsylvania Judicial Conduct Board about the judge presiding over his probation violation proceeding and a *pro se* appeal of that judge's decision deferring sentence therein until his new charges are resolved. (*Id.* at 10.)

## II. STANDARD OF REVIEW

As Caterbone has been granted leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the AC if, among other things, it is frivolous or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995). Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Caterbone is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

The vehicle by which a person may bring suit for a violation of the civil rights is Section 1983 of Title 42 of the United States Code. The Section provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

3

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

  A.  **Deliberate Indifference to Serious Medical Needs Claims**

To state a claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Caterbone has not stated a claim based on deliberate indifference to serious medical needs. He asserts, inconsistently, that his request for pain medication was denied but concedes

4

that he received Naproxen twice daily as needed.  He also received use of an assistive cane, albeit not as quickly as he would have liked.  While Caterbone may disagree with decisions about the extent or frequency of treatment he desired, other than his insufficient conclusory allegation that  the medical staff intermittently took him off the medication at will to inflict pain and suffering, he has not alleged any facts from which one could plausibly infer that his medical needs were regarded with deliberate indifference.  This allegation is also insufficient since Caterbone does not allege the personal involvement of any named Defendant, does not explain how non-medical staff were responsible for the harm he allegedly suffered, and he does not allege his lack of treatment was caused by a policy or custom.  Finally, his speculative prediction that he will be unable to walk in the future is also insufficient.  Accordingly, the Court will dismiss his medical indifference claims.

B. **Claims Based on Grievances**

To the extent that the AC may be read as asserting claims based on the manner in which Defendants Steeberger, Prime Care and Vollroth responded to Caterbone's complaints and grievances, those claims are also dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam).  Accordingly, the facts alleged by Caterbone about grievances do not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice.

### C. Claims Based on Lack of Access to the Courts

In Caterbone's original Complaint he attempted to raise a claim based on lack of access to the court, asserting that he had been denied writing materials and copying of his legal documents. (ECF No. 1 at 4-7.) The claim was found not to be plausible since Caterbone, whom publicly available docket records showed was represented by counsel in his pending criminal case during the entire time he has been in custody at LCP, failed to allege that he lost any nonfrivolous and arguable legal claim. (ECF No. 6 at 4.) As the Court stated in that earlier decision,

> "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*. Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam).

(ECF No. 6 at 4-5.)

In the AC, which the Court permitted Caterbone leave to file if he was able to cure the defects noted by the Court, he appears to assert that his attempts to file appeals on May 4 and 29, 2019 in a previous criminal case, *Commonwealth v. Caterbone*, CP-36-CR-6520-2017, were thwarted by prison officials because he "confirm[ed] that docket reports of CP-36-CR-6520-2017 show the appeal was not recorded." However, a review of that publicly available docket shows the current status of that case as "Awaiting Appellate Court Decision" based on an earlier-

filed "*Pro Se* Notice of Appeal" filed by Caterbone on November 26, 2018 and a counseled "Appeal Filed in Superior Court" on December 5, 2018 by his appointed attorney. Thereafter, a Rule 1912 Concise Statement Order was entered on December 5, 2018 by the assigned trial judge, and counsel filed a Concise Statement of Errors Complained of on Appeal on December 21, 2018. Thus, any claim that Caterbone's appeal was thwarted is implausible. Moreover, during the May 2019 time period identified by Caterbone, the records reflects numerous *pro se* filings by Caterbone docketed by the Court — presumably because they were not thwarted by prison officials entrusted with forwarding them for docketing — including a pleading entitled "Motion for Reconsideration" filed on May 29, 2019, the very date mentioned by Caterbone in the AC. More importantly, having been given the opportunity to cure the defect noted by the Court, Caterbone has again failed to show that he lost a nonfrivolous and arguable claim, and he does not explain how any such inadequacies in handling prison legal mail prevented him from meaningfully pursuing his legal claims. Accordingly, the Access to Court claim will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IV. **CONCLUSION**

All claims in Caterbone's AC are dismissed against all Defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). As Caterbone has already been granted leave to file an amended complaint and failed to cure the defects previously noted by the Court, the dismissal is with prejudice as any further attempt at amendment would be futile. An appropriate Order follows.

**BY THE COURT:**

**/s/ Jeffrey L. Schmehl**
**JEFFREY L. SCHMEHL, J.**